# In the United States Court of Federal Claims
(Pro Se)

|  |  |  |
|---|---|---|
| MICHAEL PAUL EAGAR, | ) | |
| Plaintiff, | ) ) ) | |
|  | ) | No. 23-372L |
| v. | ) ) | (Filed: September 19, 2023) |
| THE UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

Michael Paul Eagar, Pro Se, Santa Clara, Utah.

Samantha G. Peltz, Trial Attorney, Natural Resources Section, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom was Todd Kim, Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC.

## OPINION AND ORDER

**Kaplan, Chief Judge.**

This case is currently before the Court on the government's motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, the government's motion is **GRANTED**.

### BACKGROUND[1]

The Plaintiff in this case, Michael Paul Eagar, owns ten mining claims located within the Red Cliffs National Conservation Area in Washington County, Utah. See Compl. at 4, Docket No. 1; Compl. Ex. 2, at 14, Docket No. 1-2 (map of mining claims). Initially staked by his father in 1951, the mining claims have been in Mr. Eagar's family for many years. Pl.'s Resp. to Def.'s Mot. to Dismiss at 1, Docket No. 13. According to Mr. Eagar, the mines subject to his claims contain valuable deposits of uranium, gold, silver, and copper. Compl. Ex. 2, at 7.

In 1990, the Fish & Wildlife Service ("FWS"), an agency of the United States Department of the Interior, issued a final rule listing the Mojave Desert tortoise as a threatened species under the Endangered Species Act of 1973, 16 U.S.C. §§ 1531–43. See 50 C.F.R. pt. 17.

---

[1] For the purposes of the government's motion to dismiss, the Court accepts as true all facts Mr. Eagar alleges. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).

In 1994, FWS issued final rules designating areas within California, Nevada, Utah, and Arizona as critical habitat for the threatened species. See 59 Fed. Reg. 5820, 5827 (Feb. 8, 1994). The designated areas included the land in Washington County on which Mr. Eagar has mining claims. See Compl. at 4; Compl. Ex. 2, at 14.

On August 10, 2000, the Department of the Interior issued a final rule concerning mining rights within the protected area. See Public Land Order No. 7460, 65 Fed. Reg. 49010, 49010–11 (Aug. 10, 2000). Under that rule, no new mining claims would be recognized, but individuals with "valid existing rights"—i.e., preexisting mining claims—would be allowed to continue to mine so long as they received approval to do so under applicable laws and regulations. See id. at 49011; 30 U.S.C. § 26 ("[S]o long as they comply with the laws of the United States, and with State, territorial, and local regulations . . . , [the locators of all mining locations situated on the public domain] shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations . . . .").[2]

In March 2009, Congress enacted legislation designating about 44,000 acres of the protected area as the Red Cliffs National Conservation Area ("RCNCA"). See Omnibus Public Land Management Act of 2009, Pub. L. No. 111–11, § 1974, 123 Stat. 991, 1081–83 (2009) (codified at 16 U.S.C. § 460www). As with the Interior Department's 2000 rule, the legislation withdrew all federal land located in the RCNCA from "location, entry, and patenting under the mining laws, "[s]ubject to valid existing rights." 16 U.S.C. § 460www(g)(1).

Mr. Eagar, proceeding pro se, filed this complaint on March 13, 2023. See Compl. at 1. He alleges that "25 years ago"—presumably referring either to the 1994 FWS regulation designating critical habitat areas or the 2000 Interior Department regulation concerning mining rights—"our mining claims were illegally included in a 65,000-acre Reserve for the (so called endangered Desert Tortoise)." Compl. at 4. According to Mr. Eagar, other landowners and cattle ranchers were compensated for the alleged Fifth Amendment taking effected by the government's action, but miners were not. See id. at 4–5; see also id. Ex. 2, at 21 ("[BLM] made no effort to acquire our mining, and no offer for an exchanged. Our mining claims were the only property left out of any compensation.").

Mr. Eagar asserts that he has been petitioning the federal government to compensate him for the alleged loss of his mining claims every year for 26 years. See Compl. at 5; see also id. Ex. 2, at 7–8 (Letter from Mr. Eagar to BLM (Dec. 8, 2009)) ("The big 'IF' for us is the fact that the BLM, the Red Cliffs Desert Tortoise Reserve, the [FWS], and the Environmental Protection Agency are not going to permit us to extract even one ton of this valuable ore."); Def.'s Mot. to Dismiss Ex. 2, at 1–2, Docket No. 12-2 (Letter from Mr. Eagar to BLM (Mar. 29, 2006)). Mr.

---

[2] Individuals with valid existing rights on federal land within the Red Cliffs National Conservation Area must file a plan of operations containing operator information, a description of operations, a reclamation plan, a monitoring plan, and an interim management plan. See 43 C.F.R. §§ 3809.11(c)(7), 3809.401(b)(2)–(5). If an individual submits an adequate plan of operations and BLM determines that they possess a valid existing right, BLM may approve the plan of operations and allow mining activities on the protected land. See 43 C.F.R. §§ 3809.119(a), 3809.100(a).

Eagar argues, however, that his right to mine his claims is absolute, and cannot be restricted by any subsequent regulation or act of Congress. See Pl.'s Resp. at 1, Docket No. 13.

On July 14, 2023, the government moved to dismiss. See Def.'s Mot. to Dismiss at 1, Docket No. 12. It argues the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501, bars Mr. Eager's takings claim because the relevant government actions affecting his mining rights occurred in 2000 and 2009, and thus when Mr. Eager filed this suit in March 2023 more than six years had passed since his claim accrued. See Def.'s Mot. to Dismiss at 10–14.[3]

The Court has carefully considered the arguments made in the government's motion and by Mr. Eagar, in his opposition brief and other pleadings. For the reasons set forth below, it concludes that Mr. Eagar's claims are barred by the Tucker Act's statute of limitations. Therefore, the Court has no choice but to dismiss his complaint based on lack of subject matter jurisdiction.

## DISCUSSION

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all undisputed facts alleged in the complaint and "draw[s] all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). The plaintiff, however, has the burden of establishing subject-matter jurisdiction by preponderant evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969)).

Plaintiffs proceeding pro se, lacking the benefit of counsel in preparing their claims, receive a degree of latitude in their pleadings not afforded parties represented by counsel. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)) (noting that the pleadings of pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, pro se plaintiffs must also meet the burden of establishing that the court has subject-matter jurisdiction. See Trusted Integration, 659 F.3d at 1163.

The United States Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). It is well-established that the Takings Clause is a money mandating source for purposes of Tucker Act jurisdiction. Jan's Helicopter Serv., Inc. v. F.A.A., 525 F.3d 1299, 1309 (Fed. Cir. 2008).

---

[3] The government argues in the alternative that the complaint should be dismissed for failure to state a claim. Def.'s Mot. to Dismiss at 14–15, Docket No. 12. Specifically, it contends that Mr. Eagar's takings claim is unripe because he has failed to submit a plan of operations with BLM, as required to conduct mining operations on the land subject to his mining claims. Id. The Court does not reach this argument because it agrees with the government that it lacks subject matter jurisdiction over Mr. Eagar's claims.

Claims brought under the Tucker Act, however, are subject to a six-year statute of limitations. Section 2501 of Title 28 states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501.The limitations period is jurisdictional in nature. John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008); see also Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988) (noting that the statute of limitations "is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.").

A cause of action under the Tucker Act accrues, and the statute of limitations begins to run, "when all events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians, 855 F.2d at 1577; see also Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240 (1966)) (explaining the "cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'"); Boling v. United States, 220 F.3d 1365, 1370 (Fed. Cir. 2000) ("[T]he key date for accrual purposes is the date on which the plaintiff's land has been clearly and permanently taken."). In the context of regulatory takings, if the plaintiff is or should have been aware of the government action, the accrual date is typically the date of the final governmental action that effected the taking. See Barlow & Haun, Inc. v. United States, 87 Fed. Cl. 428 (2009) (quoting Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985) ("A regulatory taking claim is ripe (and thus accrues) when 'the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.'"); see also Bayou Des Familles Dev. Corp. v. United States, 130 F.3d 1034, 1038 (Fed. Cir. 1997) (explaining that "starting the statute of limitations clock" occurs when the "takings claim became ripe for adjudication").

Mr. Eagar's claim that his mining rights were taken appears to be grounded either in the regulations the Interior Department finalized in 2000, or, at the latest, in Congress' enactment of the Omnibus Public Land Management Act in 2009. Either way, Mr. Eager's claim accrued under 28 U.S.C. § 2501 well over six years before he filed this action in March 2023. Moreover, as Mr. Eagar himself admits, he has been aware of these government actions since their implementation. See Compl. at 5; id. Ex. 2, at 7–8; Def.'s Mot. to Dismiss Ex. 2, at 1–2.

Mr. Eagar argues that the statute of limitations should not bar his claims because the harm caused by the federal government's actions continues to this day. See Compl. at 5. Although he does not expressly so state, Mr. Eagar appears to be advocating application of the so-called "continuing claim doctrine." Under that doctrine, "when a defendant owes a continuing duty, a new cause of action arises each time the defendant breaches that duty." Oenga v. United States, 91 Fed. Cl. 629, 646 (2010) (citing Cherokee Nation of Oklahoma v. United States, 26 Cl. Ct. 798, 803 (1992)). For the doctrine to apply, however, the claim "must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." Brown Park Estates–Fairfield Dev. Co. v. United States,

4

127 F.3d 1449, 1456 (Fed. Cir. 1997). "[A] claim based upon a single distinct event, which may have continued ill effects later on is not a continuing claim." Id.

Mr. Eagar argues that the Court should not apply the statute of limitations in light of what he calls the "fraud, deceit and lies perpetrated by government officials." Pl.'s Mot. to Continue at 3, Docket No. 15. Although not entirely clear, the Court's impression is that—in accusing the agencies (particularly BLM) of "fraud" and "deceit"—Mr. Eagar is referring to assurances he has received over the years that he could conduct mining operations so long as he has valid claims, complies with the requirements contained in BLM's regulations, including that he submit a complete plan of operations, and secures the approval of his plan of operations from BLM. Id. Mr. Eagar asserts these assurances are false ones because the regulations put in place to protect the tortoises make it impossible for BLM to conduct the "validity exams" required to prove that the mining claims have value and also prevent miners from securing approval of their operations plans. Id.

To toll the Tucker Act's statute of limitations, "a claimant must show either 'that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date.'" All. of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1482 (Fed. Cir. 1994) (citations omitted); see also Ingrum v. United States, 560 F.3d 1311, 1315 (Fed. Cir. 2009) (citing cases supporting same). In this case, the acts that Mr. Eager contends constituted the taking of his property—the final rule the Department of the Interior issued in 2000 and the legislation Congress passed in 2009—were public acts; they were not concealed; nor were they "inherently unknowable." Indeed, as Mr. Eagar acknowledges, he has been complaining about the effect of those government actions on his mineral rights for some twenty-five years. The Court therefore rejects Mr. Eagar's argument that the bar of the statute of limitations should not apply because he has been given false assurances over the years regarding whether he will be permitted to conduct mining operations pursuant to his mining claims.

## CONCLUSION

On the basis of the foregoing, the government's motion to dismiss, Docket No. 12, is **GRANTED**. Mr. Eagar's motion to continue the case "to explore additional facts, Docket No. 12, is **DENIED**. The case is **DISMISSED** without prejudice based on lack of subject matter jurisdiction. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Chief Judge

5